DICKSON & LOTT, v. DRYDEN BROTHERS AND T. N. DRYDEN, *et al.*, Appellants.

**Partnership:** One partner may execute, in the firm name, a note in settlement of a debt on which the firm is liable.

SAME. The dissolution of a partnership does not relieve one partner from liability on a note executed after dissolution, in the partnership name, by another partner, to a former customer, where no notice of the dissolution was given to that customer and no notice was published.

*Appeal from Monona District Court*—HON. G. W. WAKEFIELD, Judge.

FRIDAY, JANUARY 31, 1896.

ACTION on notes. Trial to the court. Judgment against all the defendants. Dryden Bros. and T. N. Dryden appeal.—*Affirmed.*

*Mackenzie & Ross* for appellants.

*McMillen & Kendell* for appellees.

KINNE, J.—I.  Plaintiffs are commission men, residing in Chicago, Ill.    They brought suit upon two promissory notes, for three thousand dollars each, dated September 20, 1887, and due January 1, 1888, and May 1, 1888, respectively, and signed by McMaster & Dryden, Dryden Bros., and W. A. Dryden.  Dryden Bros. and T. N. Dryden answered, in substance, denying that W. H. Dryden and T. N. Dryden were partners under the firm name and style of Dryden Bros.; admit that such a partnership was formed in 1880; but aver that the partnership was dissolved in 1885; aver that no person had authority to sign said notes with the name of Dryden Bros.; that said notes were not given for any firm debt of said Dryden Bros.; and that the name Dryden Bros. was not signed thereto by T. N. Dryden, and, if so signed by W. H. Dryden, it was long after the partnership ceased to exist, and without any authority therefor.  The cause was tried to the court, and a judgment entered against all of the defendants, from which Dryden Bros. and T. N. Dryden only appeal.

II.  The several assignments of error all relate to the same question; that is, the alleged error of the court in finding that Dryden Bros., and T. N. Dryden, were liable on the notes.   The evidence, in some respects, is not as clear as we could wish, but from it we gather the following facts:   In 1880, or 1881, T. N. Dryden and W. H. Dryden, formed a partnership, under the firm name and style of Dryden Bros.   From 1881, to 1883, the firm was engaged in the mercantile business.   In 1883, they began farming, and buying and shipping stock.   In 1885, W. H. Dryden, for a few months, went to Shenandoah, to school.   During his absence, his father, W. A. Dryden, and his brother, T. N. Dryden, continued the business under the same firm name, and until, at least, June or July,

1887. When W. H. Dryden went away to school, it is said, the original firm was dissolved, and the business settled. No notice, however, of such dissolution was ever given plaintiffs. It also appears that the father had the permission of T. N. Dryden, to use the name, Dryden Bros., in his business until the fall of 1887, and did so. After W. H. Dryden returned from school, in the summer of 1886, he went into partnership with one, McMaster, under the firm name of McMaster & Dryden. This latter firm was engaged in merchandising, and buying and shipping stock, and continued in the stock business until the fall of 1888. Now, it seems, that Dryden Bros., and McMaster & Dryden, most of the time, shipped their stock to plaintiffs at Chicago, Ill. Sometimes, W. A. Dryden shipped with McMaster & Dryden, and divided the profits and losses of the venture. It is not disputed that the name, Dryden Bros., was signed to the notes sued upon by W. H. Dryden, and the testimony tends to show that he had no express authority from T. N. Dryden to sign that name. W. H. Dryden, who had been a member of the firm of Dryden Bros., on cross-examination, testified: "I was not in the habit of signing Dryden Brothers' name to the different papers as they came along. I signed the first one because Mr. Lott wanted more security. I deliberately put down someone else's name, that I had no authority to put down. I have the effrontery to go before a court, and admit that. I did that only once or twice. I had no authority whatever. I was not prosecuted for that offense. I never informed T. N. Dryden of it. I was not then a member of the firm of Dryden Brothers. * * * The firm of Dryden Brothers was dissolved in 1885. I did not publish notice of dissolution. I did not inform Dickson & Lott that we had dissolved. * * * I signed the name of Dryden Brothers to one other note before that." It appears, also, that, as

late as 1887, W. A. Dryden was shipping cattle to plaintiffs, part of the time in his own name, and a part of the time in the name of Dryden Bros., with the knowledge and consent of T. N. Dryden, and as a part of the business of Dryden Bros. W. A. Dryden testifies, that he worked for, and with the firm of Dryden Bros.; that "we were all in together;" and that there were no profits, but a loss. Now, several of the defendants testify that, upon the business done with plaintiffs by Dryden Bros., whatever losses there were, were adjusted and settled in June or July, 1887, with the Dunlap Bank; and that no part of the sum represented by the six thousand dollars in notes, sued upon, was an overdraft by T. N. Dryden, or Dryden Bros.; nor did said sum, or any of it, grow out of the business of T. N. Dryden, or Dryden Bros.; that it was a balance due againt McMaster & Dryden alone. The testimony, on the part of the defendants, tends strongly to show that in 1886, and thereafter, the accounts of Dryden Bros., and McMaster & Dryden, were all kept together, under the name of McMaster & Dryden, and that this was done in pursuance of instructions from W. A. Dryden, expressly assented to by McMaster & Dryden; the Dryden of the latter firm being the same Dryden who had been a member of the firm of Dryden Bros. It does not appear that T. N. Dryden had actual notice of this arrangement, regarding the keeping of the accounts, though the evidence, we think, shows that, long after the claimed dissolution of the firm of Dryden Bros., T. N. Dryden and his father drew drafts on the plaintiffs, against consignments of stock shipped them in the firm name of Dryden Bros., and that T. N. Dryden shipped stock in the firm name, which went into this McMaster & Dryden account. It is not disputed that this six thousand dollars in notes, sued upon in this account, was the correct balance due plaintiffs, upon the McMaster & Dryden

account; and, as we think, such account embraced the transactions of Dryden Bros., as well as McMaster & Dryden, since some time in 1886. There is evidence tending to show that Dryden Bros., McMaster & Dryden, and W. H. Dryden, were all buying stock and working together, and all shipping to plaintiffs.

We arrive at the conclusion, from all the testimony, that, so far as plaintiffs were concerned, there was no dissolution of the firm of Dryden Bros. If, in fact, there was a dissolution of that firm in 1885, no notice of it was ever given to plaintiffs, and no notice published. Furthermore, it is apparent that the firm continued to exist for two years or more thereafter, as we find that business was being conducted in the firm name, and with the knowledge of both of its members, and for most of that time with the express consent of T. N. Dryden. Neither of the members of the firm of Dryden Bros. took any steps whatever to make such a dissolution of the firm as would avoid their liability to third parties. It must be found, also, from the testimony, that the accounts of Dryden Bros. and McMaster & Dryden, were kept as one, with the assent of T. N. Dryden and of Dryden Bros. Some facts supporting this theory, other than the testimony of plaintiffs and McMaster, appear in the record. Notwithstanding the claimed settlement in 1885, business was conducted in the name of Dryden Bros., consignments of stock were made to plaintiffs until the fall of 1887, and drafts drawn against them; yet it appears that no settlement was made between plaintiffs and Dryden Bros., nor any statement rendered said firm by plaintiffs. We consider this a circumstance also tending to sustain the testimony of plaintiffs and McMaster, that both the accounts were kept in the name of McMaster & Dryden by mutual arrangement, and hence the balance due appeared against the latter firm. We cannot further

review the evidence. From the facts stated, and many others appearing in the record, it is clear that Dryden Bros. and T. N. Dryden are liable for any balance due plaintiffs on the account thus kept in the name of McMaster & Dryden.

III. It is insisted that, even if the partnership of Dryden Bros. still existed, yet one of the partners had no right to sign the firm's name to negotiable paper.

Now, the case we have is this, as we think the record shows: Dryden Bros. were liable on the McMaster & Dryden account, for the six thousand dollars, for which the notes in suit were given. Plaintiffs insisted upon a settlement of this liability, and one member of the firm, in settlement of this claim made upon them, and arising out of the business of the firm, signs the firm's name to these notes. He would have had the undoubted right to have paid the amount due on the account in cash, out of the firm's funds, if it had had money; and his right to execute, in the firm name, a note in settlement of the firm debt, is equally clear. The case of *Brayley v. Hedges*, 52 Iowa, 625 (3 N. W. Rep. 652), is directly in point. The decree below seems to us to be warranted by the testimony, and it is therefore AFFIRMED.